

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

FTB:EWS
F. #2022R00606

December 16, 2025

By ECF & E-Mail

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Erlene King
                  Criminal Docket No. 24-374 (CBA)

Dear Judge Amon:

        The government respectfully submits this letter in advance of the defendant's sentencing on February 11, 2026. On January 7, 2025, the defendant pleaded guilty to the sole count of the Information, which charged her with wire fraud, in violation of Title 18, United States Code, Section 1343. For the reasons set forth below, the government requests that the Court impose a sentence that is sufficient but not greater than necessary to serve the ends of justice.

I.        Background

        The New York City Campaign Finance Board ("CFB") oversees and administers a publicly funded campaign-finance system in connection with municipal elections in New York City that includes, among other things, a "matching funds program." That program provides eligible candidates with public funds based on the number and amount of certain donor contributions received by their campaigns. Among other things, to be eligible to receive public funds, candidates were required to collect a minimum number of donations and raise a minimum amount of money from New York City residents before the CFB paid any matching funds. If candidates qualified for matching funds, the CFB provided up to $8 in matching funds for each $1 of a matchable contribution. For candidates who ran for the Office of Brooklyn Borough President during the 2021 election cycle, the CFB provided $8-to-$1 matching funds up to a limit of $175 per contributor. In other words, if a candidate for the Office of the Brooklyn Borough President received an eligible contribution of $175, that candidate could collect up to $1,400 in matching funds.

        The defendant, who previously ran for New York City Council, served as the campaign treasurer for a candidate in the 2021 democratic primary for the Office of Brooklyn

Borough President ("Candidate #1"). Candidate #1 participated in the CFB's matching funds program. To participate in the program, the defendant, as treasurer, certified that she understood the CFB's matching funds program requirements and would abide by them. But she did not. Instead, the defendant orchestrated a scheme to submit fraudulent donations to the CFB so that it would award $400,000 in public matching funds. The defendant used several intermediaries to funnel money to straw donors who then contributed to Candidate #1's campaign. Many of the straw funds were distributed over electronic payment platforms with explicit directions to spread the money around to donors.

Ultimately, the defendant caused Candidate #1's campaign to submit $25,000 in straw donations. The defendant then took steps to conceal her crime. When the CFB challenged certain donor records provided by Candidate #1's campaign and asked for additional documentation, the defendant directed a campaign staffer to submit forged documents attesting that individuals whose identities were stolen had contributed to the campaign when they had not. She also directed the staffer to notarize fictitious forms.

On October 2, 2024, the defendant self-surrendered, waived indictment, and was charged in an Information with wire fraud. She pleaded guilty on January 7, 2025.

II. Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III.     Sentencing Guidelines

The parties agree with the Guidelines calculation set forth in the PSR, which is as follows:

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. § 2B1.1(a)(2)) | 7 |
| Plus: | Attempted Loss in Excess of $250,000 (U.S.S.G. § 2B1.1(b)(1)(G)) | +12 |
| Plus: | Use of Sophisticated Means (U.S.S.G. § 2B1.1(b)(10)) | +2 |
| Plus: | Aggravating Role (U.S.S.G. § 3B1.1(c)) | +2 |
| Less: | Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| | Total: | 20 |

The total Adjusted Offense Level is 20, which, with a Criminal History Category of I, carries a Guidelines range of 33 to 41 months' imprisonment.

IV.     Argument

The Court should impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. 18 U.S.C. § 3553.

The defendant's crime was serious. See United States v. Hou, 12-CR-153 (RJS), Dkt. 202 at 37 (S.D.N.Y. Nov. 21, 2013) (observing that what makes straw donor fraud "a serious crime is the fact that it compromises and undermines an institution of free elections that are essential to our system of government."). She tried to corrupt New York City's public campaign-finance system, a program designed to promote participation and public confidence in elections. As a campaign treasurer, she did so from a position of trust. And as a former candidate for elected office in New York City, the defendant acted knowing full well that undermining the integrity of the electoral process is a grave offense. The defendant's scheme was sophisticated. To make it harder to detect her criminal activity, the defendant used intermediaries to funnel straw funds and orchestrated a cover up in response to questions from the CFB. She directed campaign staffers to generate fictitious documents, forge signatures, and even create false attestation letters. She also caused one campaign staffer to steal the personal information of unsuspecting New Yorkers whose identities were used to make fraudulent contributions. Though the CFB caught on to the scheme and did not ultimately disburse the $400,000 in matching funds that the defendant tried to steal, the defendant's crime was a violation of the solemn democratic process and should be punished accordingly.

The defendant's suggestion that deterrence is not a factor in this case (Def.'s Ltr. at 8) misses the mark. While it is true that the defendant likely will never again be able to defraud the CFB, others will. Election fraud offenses are inherently difficult to detect, particularly in a city as large and influential as New York, which attracts contributions from around the country. The defendant's crime struck at the heart of the CFB's matching funds program, a landmark

3

program designed to encourage candidates to raise small-dollar contributions from New Yorkers of all economic backgrounds and ensure that elected officials are accountable to voters, not special interests. Crimes like the defendant's undermine the integrity—and ultimately imperil—this program. The Court's sentence should meaningfully deter others from defrauding the CFB's matching funds program, which continues to be the target of recent fraudulent schemes.

The government acknowledges that this case presents significant mitigating circumstances—including the defendant's age, history and characteristics, and, most important, her status as a foster parent to two children—and thus would not object to a sentence below the applicable Guidelines range. But those circumstances should not overshadow the gravity of her crime.

V.      Conclusion

For the foregoing reasons, the government respectfully submits that the Court should impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/ Eric Silverberg
        Eric Silverberg
        Assistant U.S. Attorney
        (718) 254-6365

c.c.    Clerk of Court (CBA) (by ECF and E-Mail)
        John Wallenstein, Esq. (by ECF and E-Mail)